1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

10   DENTON R. WHITE,                         )
                                                            )
11            Petitioner,                          )          2:09-cv-00400-KJD-VCF
                                                            )
12   vs.                                                 )          **ORDER**
                                                            )
13   DWIGHT NEVEN, *et al.*,                )
                                                            )
14            Respondents.                       )
     ────────────────────────────/
15

16            This action is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254,

17   by a Nevada state prisoner.  This matter comes before the Court on the merits of the petition.

18   **I. Procedural History**

19            On August 5, 2005, a judgment of conviction was entered pursuant to a jury verdict,

20   adjudging petitioner guilty of the following: resisting a public officer; discharging a firearm at or into

21   a structure, vehicle, aircraft, or watercraft; attempted robbery with the use of a deadly weapon; first

22   degree kidnapping with the use of a deadly weapon; assault with a deadly weapon; coercion with the

23   use of a deadly weapon; and battery with the use of a deadly weapon.  (Exhibit 30).[1]  Pursuant to the

24   judgment of conviction, petitioner was sentenced as follows:

25

26        ───────────────────────

          [1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 17-19.

| | | |
|---|---|---|
| Count I: | 6 months in the Clark County Detention Center | |
| Count II: | 24-60 months in the Nevada Department of Corrections (NDOC), to run concurrent with Count I | |
| Count III: | 36-96 months, plus an equal and consecutive term of 36-96 months for the use of a deadly weapon | |
| Count IV: | life with the possibility of parole after 60 months, plus an equal and consecutive term of life with the possibility of parole after 60 months for the use of a deadly weapon | |
| Count V: | 24-60 months to run concurrent to Count IV | |
| Count VI: | 24-60 months to run concurrent with Count V, and $1,245.00 in restitution | |
| Count VII: | 36-96 months to run concurrent to Count VI, with 179 days credit for time served | |

(Exhibit 30).

Petitioner filed his direct appeal on August 29, 2005.  (Exhibit 31).  On March 27, 2007, the Nevada Supreme Court affirmed petitioner's conviction.  (Exhibit 44).  Remittitur was issued on May 1, 2007.  (Exhibit 45).

Petitioner filed a state habeas petition on July 6, 2007.  (Exhibit 46).  The state district court entered findings of fact, conclusions of law, and order denying the petition on April 1, 2008. (Exhibit 63).  Petitioner appealed the denial of his state habeas petition.  (Exhibit 60).  By order entered November 21, 2008, the Nevada Supreme Court affirmed the denial of the state petition. (Exhibit 66).  Remittitur was issued on December 16, 2008.  (Exhibit 67).

Petitioner dispatched his federal habeas petition to this Court on January 28, 2009.  (Petition, ECF No. 6, at p. 1).  The petition contains fifteen grounds for habeas relief.  (*Id.*).  Respondents filed a motion to dismiss the petition.  (ECF No. 16).  By order filed June 3, 2010, this Court granted the motion to dismiss, as follows:

2

• The portion of Ground Eight concerning jury instructions 10 and 12 was dismissed with prejudice.

• Ground Nine was dismissed with prejudice, in its entirety.

• Ground Ten was dismissed with prejudice, in its entirety.

• The following portions of Ground Eleven were dismissed as duplicative: (1) petitioner's claim that the trial court abused its discretion by allowing testimony of an uncharged co-conspirator to be heard through Detective Collins; and (2) petitioner's claim that the trial court abused its discretion in denying his motion to dismiss the first degree kidnapping charges. The following portions of Ground Eleven were dismissed as procedurally defaulted: (1) petitioner's claim that the trial court abused its discretion by "restructuring" the charge of resisting a public officer with the use of a deadly weapon to simply resisting a public officer; and (2) petitioner's claim that the trial court abused its discretion by giving jury instructions 22 and 28.

• Ground Twelve was dismissed with prejudice, in its entirety.

• As to Ground Thirteen, petitioner's Thirteenth Amendment claim was dismissed with prejudice.

• Ground Fourteen was dismissed with prejudice, in its entirety.

(ECF No. 29). The Court directed respondents to file an answer to the remaining grounds of the petition. (*Id.*). Respondents filed an answer on August 18, 2010. (ECF No. 38). Petitioner filed a reply on September 9, 2010. The Court now considers the merits of the remaining grounds of the petition.

## II. Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

1
2
3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

4
5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6
7

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8    The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

9  in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

10 to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

11 decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

12 § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

13 Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

14 a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

15 Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

16 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

17    A state court decision is an unreasonable application of clearly established Supreme Court

18 precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

19 governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

20 principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

21 529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

22 than merely incorrect or erroneous; the state court's application of clearly established federal law

23 must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

24    In determining whether a state court decision is contrary to, or an unreasonable application of

25 federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v.*

26

4

1   *Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th

2   Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

3        Moreover, "a determination of a factual issue made by a State court shall be presumed to be

4   correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by

5   clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

6   **III.  Discussion**

7        **A.  Ground One**

8        Petitioner claims that the State committed *Brady* violations by: (1) not producing allegedly

9   exculpatory fingerprint evidence until the commencement of trial; and (2) failing to provide the

10  defense with transcripts of statements made by Guadalupe (the victim) and petitioner.  (ECF No. 6,

11  at pp. 3-7).  In addressing the *Brady* issue on direct appeal, the Nevada Supreme Court held that the

12  claims were without merit.  (Exhibit 44, at p. 3).

13       The suppression by prosecution of evidence favorable to an accused violates due process

14  where the evidence is material either to guilt or punishment, irrespective of the good faith of the

15  prosecutor.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  There are three components of a *Brady*

16  violation: (1) the evidence at issue must be favorable to the accused either because it is exculpatory

17  or because it is impeaching; (2) the evidence must have been suppressed by the State either willfully

18  or inadvertently; and (3) prejudice must have ensued.  *Banks v. Dretke*, 540 U.S. 668, 691 (2004);

19  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  "Such evidence is material 'if there is a

20  reasonable probability that, had the evidence been disclosed to the defense, the result of the

21  proceeding would have been different.'" *Strickler v. Greene,* 527 U.S. at 280 (quoting *United States*

22  *v. Bagley*, 473 U.S. 667, 682 (1985)).  "[T]here is never a real 'Brady violation' unless the

23  nondisclosure was so serious that there is a reasonable probability that the suppressed evidence

24  would have produced a different verdict."  *Strickler v. Greene,* 527 U.S. at 281.  A "reasonable

25  probability" is a probability sufficient to undermine confidence in the outcome.  *United States v.*

26

5

1  *Bagley*, 473 U.S. at 681-82; *see also Kyles v. Whitley*, 514 U.S. 419, 434 (1995) ("The question is

2  not whether the defendant would more likely than not have received a different verdict with the

3  evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict

4  worthy of confidence.").

5        In the instant case, a fingerprint analysis was conducted on two partial prints found on the

6  weapon used in the crime. The fingerprint analysis eliminated petitioner and his brother as potential

7  sources for the prints.  The fingerprint analysis was given to the prosecution on the day trial

8  commenced, and it was immediately given to petitioner's defense counsel.  (Exhibit 13, at 2:1-6:11).

9  Petitioner contends that he was unable to present a full defense because this evidence was turned

10  over in a belated fashion.  (ECF No. 6, at p. 3).  However, petitioner cannot demonstrate that there is

11  a reasonable probability that the result of his trial would have been different if he had received the

12  fingerprint analysis evidence earlier, because the results of the fingerprint analysis were presented to

13  the jury.  In its case in chief, the State inquired whether Detective Collins knew about the fingerprint

14  analysis, and he responded that the fingerprint analysis excluded petitioner and his brother.  (Exhibit

15  15, at 140:12-25).  Thus, the exculpatory nature of the fingerprint analysis was presented to the jury.

16  Petitioner has not demonstrated with a reasonable probability that the outcome of his trial would

17  have been different if he had received the fingerprint analysis evidence earlier or had an independent

18  fingerprint analysis.  As such, petitioner's *Brady* claim regarding the fingerprint evidence is denied.

19        Petitioner also claims that the State violated *Brady* by not providing the defense with

20  transcripts of statements made by Guadalupe and petitioner until the trial had commenced.  (ECF No.

21  6, at p. 15).  Petitioner alleges that the failure to provide the transcripts in a timely manner prevented

22  his counsel from adequately preparing for cross-examination.

23        The record demonstrates that the interview transcripts were turned over as soon as they were

24  received by the State.  (Exhibit 13, at 77:6-84:20).  The trial court recessed early to allow defense

25  counsel an opportunity to review the transcripts before cross-examining Guadalupe (the victim) and

26

1  Detective Collins.  (*Id.*).  The following day, defense counsel cross-examined Guadalupe and used

2  the interview transcript as impeachment evidence.  (Exhibit 14, at 27:1-33:16).  Petitioner cannot

3  show that he was prejudiced by receiving the transcripts after the trial had commenced.  Although

4  petitioner claims the defense could have more vigorously cross-examined Guadalupe if the defense

5  had known about the transcripts earlier, petitioner fails to point to any inconsistencies between the

6  transcribed interview, the grand jury testimony, and the trial testimony that could have been

7  developed.  Because petitioner has not shown prejudice, this Court denies the *Brady* claim regarding

8  the transcripts.  The Court denies habeas relief on Ground One, in its entirety.

9    **B.  Ground Two**

10    Petitioner claims: "The trial court abused its discretion and violated the Fifth, Sixth, and

11  Fourteenth Amendments by improperly admitting hearsay."  (ECF No. 6, at p. 9).  Petitioner claims

12  that his brother's statements and Henderson Police Department computer printouts of 911 calls

13  constituted inadmissable hearsay.  (*Id.*, at pp. 9-11).  In addressing the hearsay claims on direct

14  appeal, the Nevada Supreme Court held that the claims were without merit.  (Exhibit 44, at p. 3).

15    Evidence erroneously admitted warrants habeas relief only when it results in the denial of a

16  fundamentally fair trial in violation of the right to due process.  *Briceno v. Scribner*, 555 F.3d 1069,

17  1077 (9th Cir. 2009).  Business records and statements made by a co-conspirator are non-testimonial

18  statements under hearsay analysis.  *Crawford v. Washington*, 541 U.S. 36, 56 (2004).  Non-

19  testimonial statements are governed by *Ohio v. Roberts*, 488 U.S. 56 (1980).  Under *Roberts*,  two

20  factors are taken into consideration when analyzing hearsay under the Confrontation Clause.  First,

21  there normally must be a showing that the declarant is unavailable to testify.  *Id.* at 66.  Second, a

22  statement will be admissible only if it bears an adequate "indicia of reliability."  *Id.*  Reliability can

23  be inferred without more in a case where evidence falls within a firmly rooted hearsay exception.  *Id.*

24    A Confrontation Clause violation is subject to harmless error analysis.  *United States v.*

25  *Bowman*, 215 F.3d 951, 961 (9th Cir. 2000).  "In the context of habeas petitions, the standard of

26

1  review is whether a given error 'had substantial and injurious effect or influence in determining the

2  jury's verdict.'" *Christian v. Rhode*, 41 F.3d 461, 468 (9th Cir. 1994) (quoting *Brecht v. Abrahamson*,

3  507 U.S. 619, 637 (1993)).

4  **1. Alleged Hearsay Statements of Petitioner's Brother**

5  Petitioner alleges that hearsay statements of an "uncharged co-conspirator," his brother, were

6  improperly admitted into evidence.  During testimony, the victim Francisco Guadalupe (Guadalupe),

7  testified as to statements made by petitioner's brother during the course of the crimes.  (Exhibit 13, at

8  46:7-47:14).  The defense objected and the trial court held a sidebar conference with the attorneys.

9  After the sidebar, direct examination of Guadalupe continued.  On three additional occasions during

10  trial, Guadalupe testified as to petitioner's brother's words rather than his actions.  (Exhibit 13, at

11  52:24-53:9; 56:24-57:6; 58:21-59:25).  Guadalupe made a total of four statements that could be

12  construed as hearsay.  NRS 51.035(3)(e) provides that "[a] statement by a coconspirator of a party

13  during the course and in furtherance of the conspiracy" that "is offered against a party" qualifies as

14  non-hearsay.  Nevada law requires that the existence of a conspiracy be established by independent

15  evidence before hearsay statements of a co-conspirator can be admitted under NRS 51.035(3)(e).

16  *Carr v. State*, 607 P.2d 114 (1980).

17  Petitioner argues that Guadalupe's statements did not qualify as a hearsay exception under

18  NRS 51.035(3) because there was no evidence other than the statements to establish the existence of

19  a conspiracy.  (ECF No. 6, at pp. 9-11).

20  The Nevada Supreme Court has held that "[t]he preliminary question of the existence of a

21  conspiracy for purposes of NRS 51.035(3) need only be established . . . by 'slight evidence.'"

22  *McDowell v. State*, 746 P.2d 149, 150 (1987) (citation omitted).  In the instant case, Guadalupe

23  testified that the brother took actions demonstrating that he was an active participant, and thus a co-

24  conspirator, in the commission of the crimes.  Guadalupe testified that the brother physically

25  prevented him from escaping when petitioner went into his bedroom to retrieve a different weapon

26

8

1   and the brother hit him several times. (Exhibit 13, at 49-51). The testimony constitutes more than

2   "slight evidence" of a conspiracy required for a statement be to admissible under NRS 51.035(3).

3       Moreover, even if the statements were erroneously admitted, petitioner has not demonstrated

4   that this error had a substantial and injurious effect or influence in determining the jury's verdict.

5   Petitioner has not claimed that he was prejudiced by the admission of his brother's hearsay

6   statements. Based on the entirety of Guadalupe's testimony, petitioner cannot demonstrate he was

7   prejudiced by the hearsay statements. Guadalupe testified that petitioner said he was going to shoot

8   Guadalupe and that Guadalupe actually shot in his direction. The few hearsay statements attributed

9   to the brother were not more injurious to petitioner's case than the testimony regarding petitioner's

10  own actions. This Court finds that with respect to the hearsay statements attributed to petitioner's

11  brother, Ground Two is without merit.

12                      **2. Henderson Police 911 Records**

13      During rebuttal, the prosecution entered into evidence records of 911 calls placed to the

14  Henderson Police Department from the victim's address. (Exhibit 19, at 21-39). Prior to accepting

15  the database records into evidence, counsel for the State established that the 911 database records

16  were made in the normal course of business. (Exhibit 19, at 28:6-29:8). NRS 51.155 provides a

17  statutory hearsay exception for business records. The 911 database records are compiled by the

18  Henderson Police Department during the regular course of business. (Exhibit 19, at 28:6-29:8). As

19  such, the 911 database records qualify as business records under NRS 51.155.

20      Although petitioner has cited cases in which law enforcement databases have been found to

21  lack trustworthiness, petitioner has pointed to no factor in this case that brings the trustworthiness of

22  the database records into question. Moreover, all of the cases cited by petitioner refer to records

23  compiled by the FBI's National Crime Information Center (NCIC), which were used in an attempt to

24  demonstrate the existence of a criminal background. However, in this case, the database records

25  were not used to prove the existence of a criminal background. Instead, they were used by the State

26

9

to prove that the victim had not been the subject of numerous 911 calls.  Further, the records in

question are maintained, on a daily basis, by a local law enforcement agency.  In contrast, NCIC

records consist largely of compilations of data obtained from other law enforcement agencies.

The Nevada Supreme Court found petitioner's hearsay arguments to be without merit.

(Exhibit 44, at p. 3).  Petitioner has failed to meet his burden of proving that the state court's ruling

was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the United States Supreme Court, or that the ruling was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding.  This Court

denies habeas relief as to the admission of 911 database evidence, and denies relief as to the entirety

of Ground Two.

**C.  Ground Three**

Petitioner alleges the following:

> The Court abused its discretion and violated the United States and
> Nevada Constitutions by refusing to grant White's motion to dismiss
> Count IV, First Degree Kidnapping when the State failed to prove the
> elements of the crime and where jury instructions improperly favored
> the State.

(ECF No. 6, at p. 16).  Ground Three will be addressed as two claims – one claim alleging

insufficiency of the evidence and one claim regarding the jury instructions.

**1.  Insufficiency of the Evidence Claim**

In addressing petitioner's insufficiency of the evidence claim, the Nevada Supreme Court

held this claim was without merit.  (Exhibit 44, at p. 3).  When a habeas petitioner challenges the

sufficiency of evidence to support his conviction, the court reviews the record to determine "whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v.*

*Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).  The *Jackson*

standard does not focus on whether a correct guilt or innocence determination was made, but

whether the jury made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402

(1993). Under the *Jackson* standard, the prosecution has no obligation to rule out every hypothesis

except guilt. *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326;

*Schell*, 218 F.3d at 1023. *Jackson* presents "a high standard" to habeas petitioners claiming

insufficiency of the evidence. *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

Sufficiency claims are limited to a review of the record evidence submitted at trial. *Herrera*,

506 U.S. at 402. Such claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at

324, n.16. The reviewing court must respect the exclusive province of the fact-finder to determine

the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from

proven facts. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996). The district court must

assume the trier of fact resolved any evidentiary conflicts in favor of the prosecution, even if the

determination does not appear on the record, and must defer to that resolution. *Jackson*, 443 U.S. at

326.

In addressing petitioner's insufficiency of the evidence claim on direct appeal, the Nevada

Supreme Court ruled that the claim was without merit. (Exhibit 44, at p. 3). Under Nevada law,

> to sustain convictions for both robbery and kidnapping arising from the same course of conduct, any movement or restraint must stand alone with independent significance from the act of robbery itself, create a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involvement movement, seizure of restraint substantially in excess of that necessary to its completion.

*Mendoza v. State*, 130 P.3d 176, 181 (Nev. 2006). In the instant case, a rational trier of fact could

have found petitioner guilty of kidnapping beyond a reasonable doubt. Guadalupe testified that

petitioner forced him at gunpoint from an area of the apartment near the door to the kitchen.

(Exhibit 13, 56:11-16). Evidence showed the kitchen was farther from the front door, through which

Guadalupe could have escaped. (Exhibit 13, at pp. 86-96). Further, Guadalupe testified that the

kitchen was a confined space. (*Id.*, at 95:10-96-15). The entire transaction of events took between

one and two hours. (*Id.*, at 68:10-12). By forcing Guadalupe from a position by the door and into

11

the kitchen, which was farther from the door, petitioner substantially increased the risk of harm to

Guadalupe.  Petitioner fired shots near Guadalupe while Guadalupe was in the confines of the

kitchen, thus increasing the risk of harm to him.  Guadalupe was held for a period of time longer than

the time required for an attempted robbery.  The length of time he was detained increased the risk of

harm.

There was sufficient evidence to convict petitioner, and the trial court did not abuse its

discretion when it denied his motion to dismiss after the conclusion of the State's case and when it

denied a similar motion after trial.  The factual findings of the state court are presumed correct.  28

U.S.C. § 2254(e)(1).  The Nevada Supreme Court's determination that petitioner's sufficiency of the

evidence claim is without merit did not result in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the United States

Supreme Court, and ruling was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  This Court will deny habeas relief as to this

claim.

### 2.  Jury Instructions 10 and 12

Petitioner asserts that his due process rights were violated by jury instructions 10 and 12.  As

to jury instruction 12, petitioner claims it violated due process by making it possible for the jury to

convict him based on his brother's actions.  Petitioner also claims that both jury instructions 10 and

12 were in violation of due process because these instructions referred to the "victim."

With respect to jury instructions 10 and 12, the Nevada Supreme Court held as follows:

> Appellant Denton Ray White argues that the jury instructions relating
> to the charge of kidnapping with the use of a deadly weapon
> improperly minimized the State's burden in proving its case.  Further,
> White contends that the State erroneously told jurors during its closing
> argument that he had physically restrained the victim, as he asserts that
> there was no evidence to support his claim.  Additionally, White
> argues that the State was impermissibly able to convict him of
> kidnapping with the use of a deadly weapon solely on the basis of
> physical restraint, which White contends was a legally erroneous
> theory requiring reversal under Bolden v. State.

12

1
2
3

> We conclude that there was no plain error in the jury instructions relating to the charge of kidnapping with the use of a deadly weapon because the jury instructions comported to the suggested jury instructions prescribed in this court's recent decision in <u>Mendoza v. State</u>.

4
5
6
7

> As to the State's remarks about physical restraint during its closing argument, we conclude that those remarks were not legally erroneous because these remarks related to the victim's inability to move or leave White's apartment; these remarks permissibly bolstered the State's argument in closing that there was a substantial risk of harm for the victim.

8
9
10

> Therefore, because the State argued, among other things, that moving the victim from the kitchen to the living room substantially increased the victim's risk of harm, we conclude that the State's remarks as to the physical restraint were not legally erroneous and that the State did not impermissibly convict White of kidnaping with a deadly weapon solely on the basis of physical restraint.

11  (Exhibit 44, at pp. 1-3) (footnotes omitted).  The Nevada Supreme Court held that jury instructions

12  10 and 12 were an accurate statement of Nevada law pursuant to *Mendoza v. State*, 130 P.3d 175,

13  181 (Nev. 2006).  Petitioner has cited no authority for the proposition that jury instructions cannot

14  reference the victim without violating federal due process protections.  Petitioner has failed to meet

15  his burden of proving that the state court's ruling was contrary to, or involved an unreasonable

16  application of, clearly established federal law, as determined by the United States Supreme Court, or

17  that the ruling was based on an unreasonable determination of the facts in light of the evidence

18  presented in the state court proceeding.  This Court denies habeas relief as to this claim, and as to

19  Ground Three of the federal petition, in its entirety.

20  **D.  Ground Four**

21  Petitioner alleges the following:

22
23

> This court must reverse White's convictions for coercion, assault, and battery with the use of a deadly weapon because these convictions violate the double jeopardy clauses of the United States Constitution and the Nevada Constitution.

24
25
26

13

1  (ECF No. 6, at p. 25).  Petitioner also argues that his convictions for coercion and attempted robbery

2  constitute a violation of the Double Jeopardy Clause.  Petitioner argues that his multiple convictions

3  all arose from the same transaction and therefore cannot constitute multiple felony convictions.

4  　　　　The Double Jeopardy Clause protects criminal defendants from multiple punishments for the

5  same offense.  *Ohio v. Johnson*, 467 U.S. 493, 498 (1984).  The issue is one of legislative intent – if

6  the legislative intent is otherwise clear, there issue ends.  *Id.*, at 499, n.8.  A federal court must accept

7  a state court's interpretation of legislative intent for multiple punishment purposes, as the ultimate

8  issue of double jeopardy is entitled to deference under 28 U.S.C. § 2254(d).  *Missouri v. Hunter*, 459

9  U.S. 359, 368 (1983).  To determine whether two charges are the "same offense" or should be

10  considered two separate offenses and thus trigger double jeopardy concerns, "the test to be applied ...

11  is whether each provision requires proof of a fact which the other does not."  *Wilson v. Czerniak*, 355

12  F.3d 1151, 1154 (9th Cir. 2004) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

### 1. Coercion with a Deadly Weapon and Attempted Robbery with a Deadly Weapon are Separate and Distinct Offenses under Nevada law

15  　　　　Petitioner argues that his convictions for coercion with a deadly weapon pursuant to NRS

16  207.190 and for attempted robbery with a deadly weapon pursuant to NRS 200.380, 193.330, and

17  193.165 are violative of the Double Jeopardy Clause.  With respect to coercion, NRS 207.190

18  provides the following:

19  　　　　　　　　1.  It is unlawful for a person, with the intent to compel another to do
　　　　　　　　or abstain from doing an act which the other person has a right to do or
　　　　　　　　abstain from doing, to:

20  　　　　　　　　. . .
　　　　　　　　(c) Attempt to intimidate the person by threats or force . . .

21  Robbery is defined by NRS 200.380 as:

22
23  　　　　　　　　. . . the unlawful taking of personal property from the person of
　　　　　　　　another or in the person's presence, against his or her will, by means of
　　　　　　　　force or violence or fear of injury, immediate or future, to his or her

24  　　　　　　　　person or property, or the person or property of a member of his or her
　　　　　　　　family, or of anyone in his or her company at the time of the robbery.

25  　　　　　　　　A taking is by means of force or fear if force or fear is used to:
　　　　　　　　　　　　(a) Obtain or retain possession of property;

26

14

(b) Prevent or overcome resistance to the taking; or
(c) Facilitate escape . . .

Petitioner was convicted of attempted robbery.  NRS 193.330 provides: "An act done with the intent to commit a crime, and tending but failing to accomplish it, is attempt to commit that crime."  Under Nevada law, an individual is guilty of coercion if he or she (1) threatens the use of force (2) with the intent of compelling another to take or abstain from taking action.  NRS 207.190.

Although NRS 200.380 incorporates the threat of future harm into the definition of robbery, in this case the attempted robbery conviction did not incorporate the threat of future harm.  Rather, there were two separate acts that constituted two separate crimes.  First, petitioner held Guadalupe at gunpoint while demanding money.  (Exhibit 13, at pp. 46-48).  This use of force, exercised contemporaneously with a demand for money, constituted attempted robbery under Nevada law.  Second, when Guadalupe told petitioner that he did not have money, petitioner threatened Guadalupe with the same firearm and demanded that he bring him money the following day.  (*Id.*).  This threat of future harm if future action was not completed constituted coercion under Nevada law.

Coercion and robbery are separate and distinct offenses under Nevada law.  Because of this distinction, and because facts were present in the instant case to satisfy the elements of both crimes, petitioner's double jeopardy claim is meritless.  This Court finds that petitioner's convictions for coercion and robbery did not violate the Double Jeopardy Clause.  *See Ohio v. Johnson*, 467 U.S. 493, 498 (1984).  Habeas corpus relief is denied on this claim.

**2. The Requirements for Criminal Assault under Nevada law are Unique when compared to the Requirements for Attempted Robbery, Coercion, and Battery**

Petitioner asserts that his conviction for assault with a deadly weapon pursuant to NRS 200.471 violated his right against double jeopardy because he was also convicted of attempted robbery pursuant to NRS 200.380, coercion pursuant to NRS 207.190, and battery pursuant to NRS 200.481.

In relevant part, NRS 200.471 defines assault as:

15

1. As used in this section:
 (a) "Assault" means:
  (1) Unlawfully attempting to use physical force against another person; or
  (2) Intentionally placing another person in reasonable apprehension of immediate bodily harm . . .

With respect to coercion, NRS 207.190 provides that:

1. It is unlawful for a person, with the intent to compel another to do or abstain from doing an act which the other person has a right to do or abstain from doing, to:
 . . .
 (c) Attempt to intimidate the person by threats or force . . .

Robbery is defined by NRS 200.380 as:

. . . the unlawful taking of personal property from the person of another or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person of property of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:

 (a) Obtain or retain possession of property;
 (b) Prevent or overcome resistance to the taking; or
 (c) Facilitate escape . . .

Battery is defined by NRS 200.481 as "any willful and unlawful use of force or violence upon the person of another."

Contrary to petitioner's argument, assault has elements separate and distinct from robbery, coercion, and battery. For assault, an individual must have unlawfully attempted to use physical force against another person or have intentionally placed another person in reasonable apprehension of bodily harm. In contrast, battery requires an unlawful use of force or violence on another person. Assault does not require the use of force, and battery does not require that the other person be placed in reasonable apprehension of bodily harm. While both robbery and coercion require the threat of force, these crimes have unique elements not required for the crime of assault.

To the extent that petitioner may argue that assault is a lesser included offense of robbery and coercion, this argument fails. The record demonstrates that threats were made against Guadalupe

16

1   independent of attempted robbery or coercion.  Petitioner forced Guadalupe from the living room

2   into the kitchen prior to ever demanding money, (Exhibit 13, at pp. 44-45), demanded that

3   Guadalupe bring him money (Exhibit 13, at p. 49), and then continued to threaten to shoot

4   Guadalupe while switching between weapons (Exhibit 13, at pp. 57-60).  Additionally, petitioner

5   fired shots in the direction of Guadalupe.  (Exhibit 13, at pp. 57-60).

6        All of petitioner's convictions have separate and distinct requirements.  There was not a

7   single event giving rise to petitioner's convictions.  Rather, there were a series of events, as set forth

8   above, that constitute separate and distinct crimes.  This Court finds that petitioner's convictions for

9   coercion and robbery did not violate the Double Jeopardy Clause.  *See Ohio v. Johnson*, 467 U.S.

10  493, 498 (1984).  Habeas corpus relief is denied on this claim, and as to the entirety of Ground Four.

11       **E.  Ground Five**

12       Petitioner alleges:

13           The State failed to prove beyond a reasonable doubt White committed
             these crimes and these convictions violate the Fifth and Fourteenth
14           Amendments to the United States Constitution and Article 1, Section
             8, of the Nevada Constitution.
15
16  (ECF No. 6, at p. 35).  Petitioner claims that Guadalupe's testimony was an insufficient basis for a

17  conviction because Guadalupe was not a credible witness.

18       Guadalupe provided testimony against petitioner that was sufficient to convict him of the

19  offenses with which he was charged.  (Exhibit 13).  Petitioner does not argue that Guadalupe failed

20  to provide adequate testimony to prove the elements of the crimes of which petitioner was convicted.

21  Rather, the argues that Guadalupe's testimony was not credible.

22       It is within the exclusive province of the jury to determine the credibility of witnesses, to

23  resolve evidentiary conflicts, and to draw reasonable inferences from proven facts.  *United States v.*

24  *Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996).  Petitioner cannot premise a sufficiency of the evidence

25  claim solely on the argument that Guadalupe was not credible.  Guadalupe's credibility was properly

26  left for the jury to decide, and this Court will not re-weigh the credibility of the witnesses or

evidence presented at trial.  In reviewing petitioner's insufficiency of the evidence claim on direct

appeal, the Nevada Supreme Court ruled that the claim was without merit.  (Exhibit 44, at p. 3).

The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has

failed to meet his burden of proving that the state court's ruling was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the United States

Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  This Court denies habeas relief on Ground Five

of the federal petition.

### F.  Ground Six

Petitioner claims that his constitutional rights were violated by alleged instances of

prosecutorial misconduct.  (ECF No. 6, at pp. 45-50).

In federal habeas corpus proceedings, the issue is whether there is a violation of due process

and whether there was misconduct under the court's broad supervisory power.  *Darden v.*

*Wainwright*, 477 U.S. 168, 181 (1986).  To raise a successful claim of prosecutorial misconduct

sufficient to overturn a conviction on federal habeas corpus, a petitioner must show that a

prosecutor's improper conduct rose to the level of depriving him of a fair trial.  *Id*.  "[I]t is not

enough that the prosecutor's remarks were undesirable or even universally condemned."  *Id.* at 181.

The relevant question is whether the prosecutor's conduct "so infected the trial with unfairness as to

make the resulting conviction a denial of due process."  *Id.*  The court must distinguish ordinary trial

error of a prosecutor from that sort of egregious misconduct which amounts to a constitutional denial

of due process.  *Smith v. Phillips*, 455 U.S. 209, 211 (1982).  The Ninth Circuit has held that the

court's task of habeas review is to examine the entire proceeding to determine whether the

prosecutor's comments so infected the trial with unfairness so as to make the resulting conviction a

denial of due process.  *Hall v. Whitley*, 935 F.2d 164, 165 (9th Cir. 1991) (per curium); *see also*

*Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000).  Additionally, failure of opposing counsel to

18

1    object to misconduct may demonstrate that counsel did not discern any prejudice.  *See Le v. Mullin*,

2    311 F.3d 1002, 1013 (10th Cir. 2002) (while not dispositive, failure to object is relevant to the issue

3    of fundamental fairness).  If a cautionary instruction is given by the trial court, the jury is presumed

4    to follow it.  *Drayden*, 232 F.3d at 713.

5         Petitioner first claims that "the prosecutor improperly shifted the burden of proof during the

6    State's case in chief and improperly used the late production of fingerprint evidence to the State's

7    advantage."  (ECF No. 6, at p. 45).  The fingerprint evidence at issue was raised in Ground One of

8    the petition and was discussed earlier in this order.  Petitioner argues that the prosecutor improperly

9    suggested that Guadalupe had left prints on the guns, implied to jurors that petitioner had failed to

10   have the gun analyzed for his own defense, and improperly suggested that petitioner's prints were

11   missing from the weapons because petitioner had wiped the weapons clean.  (*Id.*, at p. 48).

12        In the instant case, there was no evidence presented at trial to contradict petitioner's

13   ownership of the .22 caliber rifle on which unidentified fingerprints were found.  In addition to

14   Guadalupe's testimony regarding the two guns used in the crimes, Detective Collins testified that the

15   two weapons were found at petitioner's apartment.  (Exhibit 15, at 91:25-94:11).  Based on the

16   evidence, petitioner owned the two weapons used in the crimes, which were found in his apartment.

17   It is of no consequence that someone else's fingerprints other than petitioner's were found on the .22

18   caliber rifle, or that the defense did not have an opportunity to have the fingerprints independently

19   analyzed.  The actions of the prosecutor were not prejudicial and did not infect the trial with

20   unfairness so as to deprive petitioner of due process and a fair trial.

21        Next, petitioner claims that the prosecutor misstated the evidence and made improper

22   comments during closing arguments.  (ECF No. 6, at p. 48).  First, the court notes that defense

23   counsel did not object to the prosecution's closing argument, which implies that counsel did not

24   discern any prejudice.  *See Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002).  Second, the jury was

25   properly instructed that the arguments of counsel do not constitute evidence.  (Exhibit 20, at

26

19

Instruction 24).  If a cautionary instruction is given by the trial court, the jury is presumed to follow it.  *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000).  Even if counsel did make a misstatement during closing argument, the jury was properly instructed that arguments of counsel were not to be considered evidence.  Moreover, during his closing argument, the prosecutor warned the jury that his memory might not be perfect, and that they should rely on their own memories and notes when deciding the evidence.  (Exhibit 19, at 57:3-16).  This Court finds that the prosecutor's closing argument was not prejudicial and did not infect the trial with unfairness so as to deprive petitioner of due process and a fair trial.

Petitioner next claims that the prosecutor improperly used the term "victim" during closing arguments.  (ECF No. 6, at p. 50).  The record does not show that defense counsel objected to the use of the word "victim" during the prosecutor's closing argument.  The Ninth Circuit has held that it is not prosecutorial misconduct to reference the "victims" of a crime in closing arguments.  *People of Territory of Guam v. Ignacio*, 852 F.2d 459, 462 (9th Cir. 1988).  This Court finds that the prosecutor's reference to the victim in closing argument was not prejudicial and did not infect the trial with unfairness so as to deprive petitioner of due process and a fair trial.

Finally, petitioner asserts that the prosecutor engaged in misconduct by including an analogy during his closing argument that "improperly aligned the State with the 'good guys' and the defense with the 'bad guys.'"  (ECF No. 6, at p. 50).  The Court has reviewed the transcript of the prosecution's closing that petitioner challenges.  (Exhibit 19, at 48:24-49:11).  The prosecutor's comments attempted to explain to the jury the difference between direct evidence and circumstantial evidence.  (*Id.*).  Petitioner has taken the terms "good guys" and "bad guys" out of context.  The prosecutor in no way aligned the prosecution with the "good guys" and the defense with the "bad guys.  Moreover, petitioner has failed to demonstrate that he was prejudiced by the prosecutor's statements.  This Court finds that the prosecutor's reference to the words "good guys" and "bad

guys" in closing argument was not prejudicial and did not infect the trial with unfairness so as to deprive petitioner of due process and a fair trial.

The Nevada Supreme Court held that petitioner's claims of prosecutorial misconduct were without merit.  (Exhibit 44, at p. 3).  This Court has similarly found that petitioner's allegations of prosecutorial misconduct are meritless.  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court denies habeas relief as to Ground Six of the federal petition.

**G.  Ground Seven**

Petitioner claims that cumulative error deprived him of a fair trial.  (ECF No. 6, at p. 52).  The Nevada Supreme Court found petitioner's cumulative error claim to be without merit.  (Exhibit 44, at p. 3).

To the extent that cumulative error may be grounds for federal habeas relief, "the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973)).  A fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive," and thereby had a "substantial and injurious effect or influence" on the jury's verdict.  *Parle*, 505 F.3d at 928 (citing *Chambers*, 410 U.S. at 294; *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

This Court has reviewed the state court record and the pleadings filed by the parties.  Petitioner has not demonstrated that cumulative errors occurred.  *See Stack v. McDaniel*, 529 U.S. 473 (2002) (when no single constitutional error exists, nothing can accumulate to the level of a constitutional violation).  Even assuming that an error did occur, this Court finds that such error did

not have a substantial and injurious effect or influence on the jury's verdict, nor did it result in a trial

that was fundamentally unfair.  As such, this Court denies habeas relief on Ground Seven.

**H.  Ground Eight**

Petitioner claims that his First, Fifth, Sixth, and Fourteenth Amendment rights were violated

based on the trial court giving jury instructions 10, 12, and 30.  (ECF No. 6, at pp. 54-56).  Petitioner

further argues that:

> Petitioner's conviction and sentence are invalid under the federal
> constitutional guarantees of freedom of association, due process, equal
> protection, and trial before an impartial jury.  Because of the "guilt or
> innocence" during trial improperly minimized the State's burden of
> proof and tacitly endorsed a conviction on the theory of "guilt by
> association" with his brother in the apartment of 1640 Athol-325.

(*Id.*, at p. 55).  In a prior order, the portion of Ground Eight pertaining to jury instructions 10 and 12

was dismissed as duplicative of Ground Three.  (ECF No. 29, at p. 4).  This Court has discussed jury

instructions 10 and 12 earlier in this order, under Ground Three.  To the extent that petitioner is

challenging his conviction based on jury instruction 30, this claim is procedurally barred.

**1.  Procedural Default Principles**

"Procedural default" refers to the situation where a petitioner in fact presented a claim to the

state courts but the state courts disposed of the claim on procedural grounds, instead of on the merits.

A federal court will not review a claim for habeas corpus relief if the decision of the state court

regarding that claim rested on a state law ground that is independent of the federal question and

adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

> The *Coleman* Court stated the effect of a procedural default, as follows:
> In all cases in which a state prisoner has defaulted his federal claims in
> state court pursuant to an independent and adequate state procedural
> rule, federal habeas review of the claims is barred unless the prisoner
> can demonstrate cause for the default and actual prejudice as a result of
> the alleged violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of justice.

1   *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).  The procedural

2   default doctrine ensures that the state's interest in correcting its own mistakes is respected in all

3   federal habeas cases.  *See Koerner v. Grigas,* 328 F.3d 1039, 1046 (9th Cir. 2003).

4        To demonstrate cause for a procedural default, the petitioner must be able to "show that some

5   *objective factor external to the defense* impeded" his efforts to comply with the state procedural rule.

6   *Murray*, 477 U.S. at 488 (emphasis added).  For cause to exist, the external impediment must have

7   prevented the petitioner from raising the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

8   Ineffective assistance of counsel may satisfy the cause requirement to overcome a procedural default.

9   *Murray*, 477 U.S. at 488.  However, for ineffective assistance of counsel to satisfy the cause

10  requirement, the independent claim of ineffective assistance of counsel, itself, must first be presented

11  to the state courts.  *Murray*, 477 U.S. at 488-89.  In addition, the independent ineffective assistance

12  of counsel claim cannot serve as cause if that claim is procedurally defaulted.  *Edwards v. Carpenter*,

13  529 U.S. 446, 453 (2000).

14       With respect to the prejudice prong of cause and prejudice, the petitioner bears:

15           the burden of showing not merely that the errors [complained of]
             constituted a possibility of prejudice, but that they worked to his actual
16           and substantial disadvantage, infecting his entire [proceeding] with
             errors of constitutional dimension.

17
18  *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170

19  (1982).  If the petitioner fails to show cause, the court need not consider whether the petitioner

20  suffered actual prejudice.  *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*, 847 F.2d

21  528, 530 n.3 (9th Cir. 1988).

22           **2.  Claim Regarding Jury Instruction 30 was Procedural Defaulted in State
             Court on Independent and Adequate State Grounds**

23  The Nevada Supreme Court ruled as follows on petitioner's state habeas petition:

24           In his petition, appellant contended that: (1) the district court erred in
             giving Jury Instructions Nos. 22, 23, 28, and 30; (2) the district court
25           erred in "restructuring" the indictment; and (3) the prosecution
             committed misconduct by commenting on his post-arrest silence,

26

                                        23

1

2

3

4

5

> eliciting testimony of his prior arrest, vouching for the victim's credibility, attacking the moral credibility of defense witnesses, asking a witness if he received any information pointing to the defendant's innocence, and improperly characterizing the reasonable doubt jury instruction. These claims could have been raised on direct appeal and appellant failed to demonstrate good cause for his failure to do so. [Footnote 2: NRS 34.810(1)(b)]. Therefore, the district court did not err in denying these claims.

6

(Exhibit 66, at p. 2). The Ninth Circuit Court of Appeals has held that, at least in non-capital cases,

7

application of the procedural bar at issue in this case -- NRS 34.810 -- is an independent and

8

adequate state ground. *Vang v. Nevada*, 329 F.3d 1069, 1073-75 (9th Cir. 2003); *see also Bargas v.*

9

*Burns*, 179 F.3d 1207, 1210-12 (9th Cir. 1999). The claim regarding jury instruction 30 was

10

procedurally defaulted in the Nevada Supreme Court on independent and adequate state grounds.

11

### 3. Cause and Prejudice

12

Petitioner has not addressed the issue of procedural default and has not asserted any reason

13

for his failure to properly raise his claim regarding jury instruction 30 on direct appeal. Neither the

14

petition itself, nor petitioner's other filings, address the procedural default of the claim or asserts any

15

argument of cause and prejudice to excuse the procedural default. This Court finds petitioner's

16

claim regarding jury instruction 30, in Ground Eight of the federal petition, was procedurally

17

defaulted in state court.

### 4. Merits of Claim Would Fail

18

Even if this Court did not find petitioner's claim regarding jury instruction 30 to be

19

procedurally barred, this claim nevertheless lacks merit. In pertinent part, jury instruction 30 states:

20

"Your verdict must be unanimous. As soon as you have agreed upon a verdict, have it signed and

21

dated by your foreperson and then return with it to this room." (Exhibit 20). NRS 178.481 states:

22

"The verdict shall be unanimous. It shall be returned by the jury to the judge in open court." As

23

such, jury instruction 30 was a complete and accurate statement of Nevada law. As to petitioner's

24

claims that his rights to freedom of association, due process, equal protection, and a trial before an

25

26

1   impartial jury were violated, these allegations are purely conclusory.  This Court denies habeas relief

2   as to the entirety of Ground Eight.

3       **I. Ground Eleven**

4       Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated.

5   (ECF No. 6, at p. 65).  Following this Court's order of June 3, 2010, two claims for relief remain in

6   Ground Eleven.  (ECF No. 29).

7       First, petitioner argues that: "Trial court abused its discretion by ruling against Petitioner on

8   burden shifting testimony from fingerprint analysis about none of the parties (i.e. defense requesting

9   that Francisco Guadalupe's fingerprints be ran to see if his prints were on the shotgun)." (ECF No.

10  6, at p. 66).  Petitioner is challenging the trial court's decision regarding the admissibility of evidence

11  concerning fingerprints found on the .22 caliber rifle.  Federal courts will not disturb a state

12  evidentiary ruling, but may only consider whether the evidence was so prejudicial that its admission

13  violated fundamental due process and the right to a fair trial.  *Larson v. Palmateer*, 515 F.3d 1057,

14  1066 (9th Cir. 2008).  In the instant case, petitioner was not prejudiced by the fingerprint evidence, as

15  discussed earlier in this order.  The defense never made the argument that the two guns found were

16  not owned by petitioner.  The fact that petitioner owned two guns was supported by Guadalupe's

17  testimony and the testimony of Officer Collins.  The fingerprint evidence was largely irrelevant, as it

18  was uncontested that petitioner owned the weapons.  Petitioner has not shown that the fingerprint

19  evidence was so prejudicial that its admission violated fundamental due process and the right to a

20  fair trial.  As such, this claim is denied.

21      Second, in Ground Eleven, petitioner alleges:

22          Trial court abused its discretion at the June 13, 2005, post-trial hearing
            on Defendant's motion to dismiss first degree kidnapping.  Court
23          should have set aside the juror's verdict where the lay juror's
            misunderstood or misinterpreted the law and where the triers of fact
24          didn't find that asportation and the inconsequential movement of the
            victim increased his risk of harm.

25

26

25

(ECF No. 6, at p. 66).  This claim is unsupported by the record.  There is nothing in the state court record to indicate that the jury misinterpreted the law.  There is nothing in the record to support the allegation that the jury did not find the victim had been moved resulting in an increased risk of harm.  As discussed earlier in this order, there was sufficient evidence to support a finding that the victim was moved and the movement caused an increased risk of harm.  The evidence demonstrated that petitioner forced Guadalupe at gunpoint from an area of the apartment near the door to the kitchen.  (Exhibit 13, at 56:11-16).  Evidence showed that the kitchen was farther from the door, through which Guadalupe could have escaped.  (*Id.*, at 95:10-96:15).  Guadalupe testified that the kitchen was a confined space.  (*Id.*, at 95:10-96:15).  Petitioner's assertion that the jurors misunderstood or misinterpreted the law is without support.  The Court denies habeas relief as to this claim, and the entirety of Ground Eleven.

### J. Ground Thirteen

Petitioner alleges that he received ineffective assistance of pretrial, trial, and sentencing counsel in violation of his Sixth and Fourteenth Amendment rights.  (ECF No. 6, at p. 71).[2]

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense.  *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[2]  The Thirteenth Amendment claim in this ground was dismissed in the Court's order of June 3, 2010.  (ECF No. 29).

would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine confidence in the outcome."  *Id.*  Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy.  *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an 'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v. Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1, 5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.*

The United States Supreme Court recently described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)).  The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . . through the "deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted).  Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401.

In the instant case, petitioner alleges that defense counsel did not file a timely pretrial petition for a writ of habeas corpus challenging the first degree kidnapping or duplicity of the indictment. The Nevada Supreme Court considered this claim and ruled:

> Appellant failed to demonstrate that he was prejudiced.  Appellant
> filed a motion to dismiss the kidnapping count in the district court,

1
2
3
> which was denied.  Furthermore, appellant's conviction for first-degree
> kidnapping was affirmed on direct appeal.  Thus, appellant failed to
> demonstrate that a pretrial petition for a writ of habeas corpus had a
> reasonable probability of success.  Therefore, the district court did not
> err in denying this claim.

4   (Exhibit 66, at pp. 3-4).  The Nevada Supreme Court cited to and applied the correct federal standard

5   for ineffective assistance of counsel claims, *Strickland v. Washington*, 466 U.S. 668 (1984).  (Exhibit

6   66, at p. 3, n. 4).  The factual findings of the state court are presumed correct.  28 U.S.C. §

7   2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was

8   contrary to, or involved an unreasonable application of, clearly established federal law, as

9   determined by the United States Supreme Court, or that the ruling was based on an unreasonable

10  determination of the facts in light of the evidence presented in the state court proceeding.  The Court

11  will deny habeas relief on this claim.

12        Petitioner next argues that defense counsel did not file a motion in the trial court to test his

13  clothing or the apartment for the presence of gunshot residue.  The Nevada Supreme Court addressed

14  this claim as follows:

15
16
17
18
19
> Second, appellant claimed that trial counsel was ineffective for failing
> to file a pretrial motion for a paraffin test of his clothing and the scene
> of the alleged crime to ascertain the presence of gunpowder residue.
> Appellant failed to demonstrate that he was prejudiced.  Appellant did
> not explain this claim or provide any evidence demonstrating what
> such a test would have revealed.  Thus, appellant failed to demonstrate
> a reasonable likelihood that a motion for such a test would have been
> successful or changed the result of the trial.  Therefore, the district
> court did not err in denying this claim.

20  (Exhibit 66, at p. 4) (footnotes omitted).  The Nevada Supreme Court cited to and applied the correct

21  federal standard for ineffective assistance of counsel claims, *Strickland v. Washington*, 466 U.S. 668

22  (1984).  (Exhibit 66, at p. 3, n. 4).  The factual findings of the state court are presumed correct.  28

23  U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling

24  was contrary to, or involved an unreasonable application of, clearly established federal law, as

25  determined by the United States Supreme Court, or that the ruling was based on an unreasonable

26

determination of the facts in light of the evidence presented in the state court proceeding.  The Court

will deny habeas relief on this claim.

Next, petitioner claims that defense counsel was ineffective for not requesting a continuance

once presented with the fingerprint evidence. On this issue, the Nevada Supreme Court held:

> Appellant failed to demonstrate that he was prejudiced.  The evidence
> was disclosed by the State as soon as it was available and the defense
> had the opportunity to review it and present it to trial.  Because the
> evidence was favorable to the defense, was fully reviewed, and was
> presented at trial, appellant failed to demonstrate a reasonable
> likelihood that, had a continuance been granted, the results of the trial
> would have been different.  Therefore, the district court did not err in
> denying this claim.

(Exhibit 66, at p. 4).  The factual findings of the state court are presumed correct.  28 U.S.C. §

2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was

contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the United States Supreme Court, or that the ruling was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding.  The Court

will deny habeas relief on this claim.

Petitioner argues that trial counsel was ineffective for not filing a motion to have an

independent defense expert conduct fingerprint analysis to determine if Guadalupe's fingerprints

were on either of the weapons.  The Nevada Supreme Court considered this claim and rejected it, as

follows:

> Fourth, appellant claimed that trial counsel was ineffective for failing
> to move the court for a second fingerprint analysis of the rifle and
> shotgun.  Specifically, appellant claimed that a separate analysis
> should have been conducted in order to eliminate the fingerprints as
> the victim's in order to call into question the victim's story that at
> some point during the incident, he pushed the barrel of the gun out of
> his face.  Appellant failed to demonstrate that he was prejudiced.
> Appellant's claim was purely speculative and is not supported by the
> record.  The only fingerprints that were recovered were taken from an
> area near the stock of the gun.  The victim testified that he touched the
> barrel.  Thus, even if an independent analysis demonstrated that these
> fingerprints did not belong to the victim, there is no reasonable

29

> likelihood that this fact would have changed the result of trial.
> Therefore, the district court did not err in denying this claim.

(Exhibit 66, at pp. 4-5).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The Court will deny habeas relief on this claim.

Next, petitioner alleges that his trial counsel was ineffective for failing to file a motion *in limine* to prevent the introduction of hearsay statements from an uncharged co-defendant.  On this claim, the Nevada Supreme Court held:

> Fifth, appellant claimed that trial counsel was ineffective for failing to file a motion in limine to prevent the introduction of hearsay statements made by his coconspirator.  Appellant failed to demonstrate that he was prejudiced.  Trial counsel objected to the admission of these statements at trial and the district court overruled the objection.  Moreover, this issue was raised on direct appeal and this court affirmed appellant's conviction.  Thus, appellant failed to demonstrate a reasonable probability that a motion in limine would have been granted by the district court or that it would have changed the result of trial.  Therefore, the district court did not err in denying this claim.

(Exhibit 66, at p. 5).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The Court will deny habeas relief on this claim.

Petitioner next alleges that his trial counsel was ineffective for failing to request that the verdict be set aside after the trial court "restructured" the indictment.  The Nevada Supreme Court considered this claim and held:

> Sixth, appellant claimed that trial counsel was ineffective for failing to "request that the verdict be set aside after the trial court restructured the indictment and constructively amended the resisting public officer with use of a deadly weapon to resisting public officer charge." Appellant failed to demonstrate that he was prejudiced. Appellant failed to explain his claim. Particularly, appellant failed to explain how he was prejudiced by the removal of the deadly weapon language. Therefore, the district court did not err in denying this claim.

(Exhibit 66, at pp. 5-6) (footnotes omitted). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court will deny habeas relief on this claim.

Finally, petitioner alleges that his trial counsel was ineffective for failing to object to jury instructions 10, 12, 23, and 30. On this claim, the Nevada Supreme Court held:

> Seventh, appellant claimed that trial counsel was ineffective for failing to object to Jury Instruction Nos. 10, 12, 23, and 30. Appellant claimed that these instructions "affected the reliability of trial" and misled the jury on the law and "their right to disagree." Appellant failed to demonstrate that he was prejudiced. First, Jury Instruction Nos. 10 and 12 were challenged unsuccessfully on direct appeal. Second, Jury Instruction Nos. 23 and 30 are standard instructions that accurately state Nevada law. Instruction No. 23 informs the jury that if they are convinced beyond a reasonable doubt of the defendant's guilt, they should convict even if they believe other persons are also guilty. Instruction No. 30 informs the jury that their verdict must be unanimous. Thus, appellant failed to demonstrate a reasonable probability that an objection to any of these instructions would have been sustained. Therefore, the district court did not err in denying these claims.

(Exhibit 66, at p. 6) (footnotes omitted). The factual findings of the state court are presumed correct. 28 U.S.C. § 2254(e)(1). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies habeas relief on this claim, and denies habeas relief as to the entirety of Ground Thirteen.

31

**K.  Ground Fifteen**

Petitioner claims ineffective assistance of appellate counsel in violation of his Sixth and Fourteenth Amendment rights.  (ECF No. 6, at p. 77).  Petitioner claims that appellate counsel failed to federalize all of his claims for purposes of federal review and failed to present issues on appeal.  (ECF No. 6, at pp. 77-78).  The *Strickland* standard, discussed earlier in this order, applies to challenges of effective appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Appellate counsel has no constitutional duty to raise every non-frivolous issue requested by the client.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

The Nevada Supreme Court considered petitioner's claims of ineffective assistance of appellate counsel, and held as follows:

> First, appellant claimed that his appellate counsel was ineffective for failing to "federalize" his claims on direct appeal.  Appellant failed to demonstrate that counsel's performance was deficient.  He failed to demonstrate a reasonable likelihood that the results of his direct appeal would have been different if counsel had "federalized" the issues, and we decline to opine as to what claims the federal courts may or may not review.  Therefore, the district court did not err in denying this claim.
>
> Second, appellant claimed that appellate counsel was ineffective for failing to challenge Jury Instruction Nos. 23 and 30 on direct appeal.  Appellant failed to demonstrate that appellate counsel's performance was deficient or that he was prejudiced.  As stated above, those instructions are accurate statements of Nevada law and have been sustained by this court.  Accordingly, there is no reasonable probability that such a claim would have been successful on appeal.  Therefore, the district court did not err in denying the claim.

(Exhibit 66, at pp. 7-8) (footnotes omitted).  The Nevada Supreme Court cited to and applied the correct federal standard for ineffective assistance of appellate counsel claims, *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  (Exhibit 66, at p. 7, n. 12).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was

1   based on an unreasonable determination of the facts in light of the evidence presented in the state

2   court proceeding.  This Court denies habeas relief as to Ground Fifteen.

3   **IV.  Certificate of Appealability**

4        In order to proceed with his appeal, petitioner must receive a certificate of appealability.  28

5   U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9ᵗʰ Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951

6   (9ᵗʰ Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a

7   petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

8   certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

9   (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's

10   assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In

11   order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are

12   debatable among jurists of reason; that a court could resolve the issues differently; or that the

13   questions are adequate to deserve encouragement to proceed further.  *Id.*

14        Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section

15   2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the

16   order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice

17   of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has

18   considered the issues raised by petitioner, with respect to whether they satisfy the standard for

19   issuance of a certificate of appealability, and determines that none meet that standard.  The Court

20   will therefore deny petitioner a certificate of appealability.

21   **V.  Conclusion**

22        **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus is **DENIED**

23   **IN ITS ENTIRETY**.

24

25

26

1    **IT IS FURTHER ORDERED** that petitioner's motion for a free copy of the docket (ECF

2    No. 43) is **GRANTED.**  The Clerk of Court **SHALL SEND** petitioner a copy of the docket sheet in

3    this case.

4    **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

5    **APPEALABILITY.**

6    **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

7    **ACCORDINGLY.**

8    Dated this __7__ day of December, 2011.

9

10   _____

11   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

34